# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

| | |
|---|---|
| **MICHAEL PELFREY**, an individual, <br><br> Plaintiff, <br><br> v. <br><br> **CITY OF NORTH PORT**, a Florida municipal corporation, <br><br> Defendant. | CIVIL ACTION <br><br> Case No. 8:21-cv-1123 <br><br> Judge: <br><br> Mag. Judge: |

## COMPLAINT AND DEMAND FOR JURY TRIAL

**NOW COMES** the Plaintiff, **MICHAEL PELFREY** ("PELFREY" or "Plaintiff"), by and through undersigned counsel, and states the following for his Complaint:

## CAUSES OF ACTION

1. This is an action brought under the Age Discrimination in Employment Act (ADEA) and the Florida Civil Rights Act (FCRA) for (1) retaliation violation of the ADEA, and (2) retaliation in violation of the FCRA.

## PARTIES

2. The Plaintiff, **MICHAEL PELFREY** ("**PELFREY**") is an individual and a resident of Florida who was employed by the Defendant.

1

3. The Defendant is a Florida municipal corporation in Sarasota County, Florida, and employed **PELFREY** as a police officer. The Defendant employed **PELFREY** in Sarasota County, Florida.

4. At all material times, the Defendant employed greater than twenty (20) employees.

## JURISDICTION AND VENUE

5. This Court has jurisdiction of this matter under 28 U.S.C. §1331.

6. This Court has supplemental jurisdiction over **PELFREY**'s state law claims pursuant to 28 U.S.C. §1367.

7. Venue is proper in the United States District Court for the Middle District of Florida because the Plaintiff resides in Sarasota County, and the Defendant conducts business in, and some or all of the events giving rise to Plaintiff's claims occurred in Sarasota County, Florida, which is within the Middle District of Florida. Venue is proper in the Tampa Division under Local Rule 1.02(b)(5) since Sarasota County is within the Tampa Division.

8. **PELFREY** timely files the instant action within 90-days of his receipt of the EEOC's Notice of Right to Sue. (*See* Exhibit A).

## GENERAL ALLEGATIONS

9. **PELFREY** began his employment with the Defendant on October 22, 2015 and was employed as the Assistant Chief of Police.

10. **PELFREY** was born in 1957 and thus was well over the age of 40 at the time of his employment with and termination by the Defendant.

11. **PELFREY** always performed his assigned duties in a professional manner and was very well qualified for his position.

12. **PELFREY** received good to very good performance reviews until an opening for the position of chief of police became available, a position for which he was very well qualified given his nearly forty (40) years in law enforcement.

13. However, on or about January 30, 2018, the outgoing-Chief of Police (Kevin Vespia) approached **PELFREY** and asked **PELFREY** what his "exit strategy" was for leaving the employment of the Defendant.

14. Vespia sought details regarding **PELFREY**'s plans to retire and sought to elicit information as to how much longer he planned to work.

15. **PELFREY** informed Vespia that he had no intention of leaving his employment and would not do so.

16. **PELFREY** had previously informed Vespia that he was interested in applying for the chief's position that soon would be vacant.

17. However, Vespia strongly intimated that he wanted his position filled by an underqualified person under the age of 40.

18. After objecting to Vespia's request to resign, **PELFREY** was then told by Vespia on or about March 1, 2018 that he could either resign or that he would find a reason to open an Internal Affairs (IA) investigation to fire **PELFREY**. This

is almost precisely the same thing he told Mr. Steve Uebelacker after Uebelacker engaged in activity protected by the PWA. There too, Vespia did indeed open an IA and fire Uebelacker for pretextual reasons, which resulted in the Defendant having to pay nearly $100,000.00 to settle Mr. Uebelacker's claims.

19. The Defendant's IA, however, stated that it sought to terminate **PELFREY** for what was actually his engagement in activity protected by the PWA.

20. Specifically, Vespia was paranoid about any complaints of dog bites by canine officers after a series of publicly embarrassing lawsuits that alleged wrongdoing by the Defendant under Vespia's watch, which lawsuits resulted in expensive settlements paid to the plaintiffs.

21. In late October 2017, approximately eight (8) of the Defendant's police officers were involved in yet another situation where canines took down a suspect.

22. Knowing that an investigation would have to take place into the propriety of the use of such force, Vespia instructed **PELFREY** "to get ahead of this situation" and speak to the officers to coordinate their stories. **PELFREY** refused such a command because it is both in violation of the Defendant's policies, Florida's Police Officer's Bill of Rights and Florida law prohibiting the interference with an internal affairs investigation.

23. None of the Defendant's allegations against **PELFREY** are true, nor are they bona fide reasons for terminating **PELFREY**.

24. In fact, all of the Defendant's purported allegations of wrongdoing against **PELFREY** were for events that supposedly occurred months prior to **PELFREY**'s objections to age discrimination. To the extent such events are true, which they are not, they would have been known by the Defendant at the time they happened but the Defendant took no timely action against **PELFREY** for the same until **PELFREY** objected to age discrimination. What's more, if such events were really true, Vespia would not have appointed **PELFREY** Acting Chief during his month long absence in December 2017.

25. **PELFREY** objected to being asked to resign, which is merely pretext for age discrimination and, upon doing so, have been subjected to retaliation.

26. The Defendant terminated **PELFREY** on June 22, 2018.

27. The Defendant then replaced **PELFREY** with a less-qualified person substantially younger than him.

28. Pursuant to Florida Administrative Code, the Defendant completed an "Affidavit of Separation" shortly after **PELFREY** was terminated.

29. This original Affidavit of Separation was completed under oath by Chief Morales in 2018.

30. In it, the Defendant swears that **PELFREY** was only "Terminated for violation of agency or training school policy not involving a moral character violation defined in Rule 11B-27.0011, F.A.C."

31. While **PELFREY** never should have been fired in the first place, the Defendant's contemporaneous and sworn Affidavit plainly stated **PELFREY** was <u>not</u> terminated for any moral character violation.

32. This led to Pelfrey initiating legal action against the Defendant on August 20, 2018 (FLMD Case No. 8:18-cv-02072-EAK-SPF).

33. After more than a year of hard-fought litigation, the parties then attended mediation on November 25, 2019 and reached a formal settlement.

34. A key part of the settlement was that the parties agreed **PELFREY** was to be reinstated.

35. **PELFREY** was reinstated on February 24, 2020, and he resigned the next day.

36. As **PELFREY** was employed by a certified law enforcement agency, the Defendant was legally bound to complete an Affidavit of Separation, which is required upon the separation from employment of any certified law enforcement officer in the State of Florida.

37. However, following **PELFREY**'s February 25, 2020 resignation, the Defendant has refused to complete the legally-required Affidavit of Separation and instead has continued to have a 2018 Affidavit of Separation it filed with the Florida Department of Law Enforcement that indicates **PELFREY** was "terminated for violation of agency or training school policy," when in fact, **PELFREY** has now

been fully reinstated and resigned in good standing and while <u>not</u> the subject of any investigation or adverse employment action.

38.     The Defendant has stated that submitting an Affidavit of Separation for **PELFREY**'s February 2020 separation indicating that **PELFREY** resigned in good standing while not under investigation is prohibited by Florida Law "because of the nature of the sustained allegation of untruthfulness against Mr. Pelfrey."

39.     But that is an utter falsehood because the claims surrounding **PELFREY**'s June 22, 2018 termination were completely extinguished pursuant to the November 25, 2019 Settlement Agreement, and the Defendant's 2018 Affidavit of Separation had nothing to do with why **PELFREY** resigned on February 25, 2020.

40.     In February 2020, **PELFREY** resigned (i) freely and voluntarily, (ii) while under no investigation and (iii) while not the subject of any complaint. Stated simply, he was a law enforcement officer who was in good standing when he resigned, and there is no lawful reason why the City has refused to complete a proper Affidavit of Separation in 2020 other for retaliatory means.

41.     The Defendant openly admits that it has completely failed to comply with F.S. §943.139(2).

42. It has been nearly 3-years since Mr. Pelfrey was originally terminated from his employment with the Defendant and he has since unsuccessfully applied for 446 different law enforcement jobs.

43. Despite an impeccable record of employment prior to working for the Defendant, **PELFREY** has been unable to obtain employment because of the Defendant's failure to complete a proper Affidavit of Separation in regard to **PELFREY**'s February 25, 2020 resignation.

44. Despite repeated demands for compliance, the Defendant has consistently refused to complete a new and legally-required Affidavit of Separation, which is in retaliation for **PELFREY** having successfully prosecuted his age discrimination and retaliation claims in federal court and for having required the Defendant to pay a substantial sum to settle those claims.

## COUNT I – VIOLATION OF THE ADEA- RETALIATION

45. Plaintiff incorporates by reference Paragraphs 1-44 of this Complaint as though fully set forth below.

46. Following **PELFREY**'s settlement of his age discrimination claims, the Defendant retaliated by refusing to complete a legally required Affidavit of Separation.

47. **PELFREY**'s objection to age discrimination through litigation constitutes a protected activity because such requests were in furtherance of rights secured to him by law.

48. Said protected activity was the proximate cause of the Defendant's negative employment actions against **PELFREY**.

49. As a direct and proximate result of the violations of the ADEA, as referenced and cited herein, **PELFREY** has lost all of the benefits and privileges of his employment and has been substantially and significantly injured in his career path.

50. As a direct and proximate result of the violations of the ADEA, as referenced and cited herein, and as a direct and proximate result of the prohibited acts perpetrated against him, **PELFREY** is entitled to all relief necessary to make him whole as provided for under the ADEA.

51. As a direct and proximate result of the Defendant's actions, **PELFREY** has suffered damages, including but not limited to, a loss of employment opportunities, loss of past and future employment income and fringe benefits, humiliation, and non-economic damages for physical injuries, mental and emotional distress.

52. **PELFREY** has exhausted his administrative remedies and this count is timely brought.

**WHEREFORE**, Plaintiff requests trial by jury of all issues so triable as of right, and:

i. Injunctive relief directing Defendant to cease and desist from all retaliation against employees who engage in statutorily protected acts;

ii. Back pay and all other benefits, perquisites and other compensation for employment which plaintiff would have received had he maintained his position with the Defendant, plus interest, including but not limited to lost salary and bonuses;

iii. Front pay, including raises, benefits, insurance costs, benefits costs, and retirement benefits;

iv. Reimbursement of all expenses and financial losses Plaintiff has incurred as a result of the Defendant's actions;

v. Declaratory relief declaring the acts and practices of the Defendant to be in violation of the statute cited above;

vi. Reasonable attorney's fees plus costs;

vii. Liquidated damages, and;

viii. Such other relief as this Court shall deem appropriate.

## COUNT IV – VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992- RETALIATION

53. Plaintiff incorporates by reference Paragraphs 1-44 of this Complaint as though fully set forth below.

54. Following **PELFREY**'s settlement of his age discrimination claims, the Defendant retaliated by refusing to complete a legally required Affidavit of Separation.

55. **PELFREY**'s objection to age discrimination through litigation constitutes a protected activity because such requests were in furtherance of rights secured to him by law.

56. Said protected activity was the proximate cause of the Defendant's negative employment actions against **PELFREY**.

57. As a direct and proximate result of the violations of the ADEA, as referenced and cited herein, **PELFREY** has lost all of the benefits and privileges of his employment and has been substantially and significantly injured in his career path.

58. As a direct and proximate result of the violations of the ADEA, as referenced and cited herein, and as a direct and proximate result of the prohibited acts perpetrated against him, **PELFREY** is entitled to all relief necessary to make him whole as provided for under the ADEA.

59. As a direct and proximate result of the Defendant's actions, **PELFREY** has suffered damages, including but not limited to, a loss of employment opportunities, loss of past and future employment income and fringe benefits, humiliation, and non-economic damages for physical injuries, mental and emotional distress.

60. **PELFREY** has exhausted his administrative remedies and this count is timely brought.

**WHEREFORE**, Plaintiff requests trial by jury of all issues so triable as of right, and:

i. Injunctive relief directing the Defendant to cease and desist from all retaliation against employees who engage in statutorily protected acts;

ii. Back pay and all other benefits, perquisites and other compensation for employment which plaintiff would have received had he maintained his position with the Defendant, plus interest, including but not limited to lost salary and bonuses;

iii. Front pay, including raises, benefits, insurance costs, benefits costs, and retirement benefits;

iv. Reimbursement of all expenses and financial losses Plaintiff has incurred as a result of Defendant's actions;

v. Declaratory relief declaring the acts and practices of the Defendant to be in violation of the statute cited above;

vi. Reasonable attorney's fees plus costs;

vii. Compensatory damages;

viii. Punitive damages, and;

ix. Such other relief as this Court shall deem appropriate.

## **DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b) and the Seventh Amendment to the United States, the Plaintiff demands a trial by jury as to all issues triable as of right.

Respectfully submitted,

Dated: May 10, 2021                /s/ Benjamin H. Yormak
                                   Benjamin H. Yormak
                                   Florida Bar Number 71272
                                   Trial Counsel for Plaintiff
                                   Yormak Employment & Disability Law
                                   9990 Coconut Road
                                   Bonita Springs, Florida 34135
                                   Telephone: (239) 985-9691
                                   Fax: (239) 288-2534
                                   Email: byormak@yormaklaw.com